IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TAKADU LTD., | ) ) | REDACTED - PUBLIC VERSION |
| Plaintiff, | ) ) ) | (Filed June 2, 2023) |
| v. | ) ) | C.A. No. 21-291-RGA-SRF |
| INNOVYZE LLC, | ) ) | ██████████████ |
| Defendants. | ) ) ) | |

**INNOVYZE'S OPENING DISCOVERY DISPUTE
LETTER TO JUDGE FALLON REGARDING MOTION TO COMPEL**

Of Counsel:

Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com

Kyle Mooney
Kyle D. Friedland
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
(212) 468-8000
kmooney@mofo.com
kfriedland@mofo.com

Michael J. DeStefano
MORRISON & FOERSTER LLP
600 Brickell Ave., Suite 1560
Miami, FL 33131
(786) 472-6514
mdestefano@mofo.com

Dated: May 24, 2023

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Innovyze LLC*



**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Samantha G. Wilson**
P 302.571.5018
swilson@ycst.com

May 24, 2023

**<u>VIA CM/ECF & HAND DELIVERY</u>**

The Honorable Sherry R. Fallon
United States District Court
  for the District of Delaware
844 N. King Street
Wilmington, DE 19801

             Re:     *TaKaDu Ltd. v. Innovyze LLC,* C.A. No. 1:21-cv-00291-RGA-SRF

Dear Judge Fallon:

      TaKaDu has failed to provide full and complete responses to Interrogatory Nos. 4, 10, 11, and 17 seeking information concerning infringement and damages despite that depositions of TaKaDu's witnesses begin next week and fact discovery closes on June 13.[1]  Innovyze has repeatedly reached out to TaKaDu to try to resolve this dispute, but the parties remain at an impasse.

      **<u>Interrogatory No. 4 (Direct and Indirect Infringement)</u>**.  Interrogatory No. 4 seeks information concerning TaKaDu's contention that Innovyze directly and indirectly infringes the claims of the asserted patents.  This information goes to the heart of TaKaDu's infringement claims.  But TaKaDu merely parrots the legal standards for direct infringement, induced infringement, and contributory infringement.  (Exhibit 1 at 11.)  TaKaDu does not state for each asserted claim whether Innovyze directly infringes, induces infringement, or contributes to infringement.  TaKaDu does not state any facts supporting direct infringement or indirect infringement.  With respect to induced infringement, TaKaDu does not identify any predicate act of direct infringement or state any facts supporting a contention that Innovyze knowingly induced infringement and possessed specific intent to encourage that infringement.  *See ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007).  With respect to contributory infringement, TaKaDu does not articulate any facts supporting a contention that there has been a predicate act of direct infringement, that any accused software has no substantial

---

[1] Innovyze encloses TaKaDu's March 15, 2023 Second Supplemental Responses and Objections to Interrogatory No. 4 (Exhibit 1); TaKaDu's May 5, 2023 Supplemental Responses and Objections to Interrogatory Nos. 10-11 (Exhibit 2); and TaKaDu's May 17, 2023 Supplemental Responses and Objections to Interrogatory No. 17 (Exhibit 3).

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
May 24, 2023
Page 2

non-infringing uses, and that the same accused software constitutes a material part of any asserted claim. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010). TaKaDu also fails to identify any documents supporting any claims of direct and indirect infringement. TaKaDu should be required to provide this information now or, if not, be precluded from trying to introduce such evidence through its experts or otherwise. *See Cryptography Rsch., Inc. v. Visa Intern. Serv. Ass'n*, No. C04–04143 JW (HRL), 2008 WL 346411, at *1 (N.D. Cal. Feb. 7, 2008) (granting motion to compel response to provide detailed description of factual and legal bases underlying claims of indirect infringement); *see also Wesley-Jessen Corp. v. Pilkington Visioncare*, 844 F. Supp. 987 (D. Del. 1994) (stating that where interrogatory calls for full factual contentions,"[plaintiff] should expect that the Court will not allow it to offer into evidence in its case in chief documents or testimony supporting that contention that are not disclosed in its response").

**Interrogatory No. 10 (Reasonable Royalty Damages)**. Interrogatory 10 seeks information concerning TaKaDu's alleged reasonable royalty damages. TaKaDu's current substantive response states in full:

> TaKaDu states that it intends to rely on comparable licenses in connection with the reasonable royalty analysis. These comparable licenses will be produced in due course. TaKaDu will then further supplement this response. In addition, TaKaDu's damages expert will opine on the information sought in this interrogatory and thus, any response now is undoubtedly premature as expert discovery has not yet commenced

(Exhibit 2 at 25.) TaKaDu's response is deficient. For example, TaKaDu does not specify the hypothetical negotiation date, address any *Georgia-Pacific* factors, state the reasonable royalty that should be applied, specify the revenue base (including smallest salable patent-practicing unit), or state the total (or even any range) of reasonable royalty damages. TaKaDu also does not identify any documents relating to any of these factors or that allegedly support the award of any reasonable royalty damages or the amount thereof. TaKaDu cannot merely claim that it "intends to rely on comparable licenses" without identifying and producing those licenses—particularly given TaKaDu's contention in response to Interrogatory No. 9 that it "has never licensed the Asserted Patents." (TaKaDu's May 19, 2023 Supplemental Objections and Responses to Interrogatory No. 9 (Exhibit 4) at 3.) TaKaDu should be required to provide a meaningful response now and before Innovyze deposes TaKaDu's witnesses and fact discovery closes. TaKaDu should not be permitted to withhold this information only to later try to introduce it through expert witnesses. *In re: Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Lit.*, No. MD-2118-SLR, 2013 WL 12291705, at *2-3 (D. Del. Oct. 22, 2013) (requiring response to damages interrogatory to include all facts damages expert intends to rely on); *TQ Delta, LLC v. Dish Network Corp., et al.*, C.A. No. 15-614-RGA (D. Del Oct. 19, 2021) (Special Master Williams) (Adopted by Andrews, J., D.I. 336 (Nov. 12, 2021)) (finding Rule 26 disclosures deficient where Plaintiff failed to identify documents it intended to rely on to support damages claims) (Exhibit 5); *see also MLC Intell. Prop., LLC v. Micro Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL 2863585, at *12, 15-16 (N.D. Cal. July 2, 2019) (excluding evidence on motion *in limine* where factual basis for reasonable royalty damages was not discussed in responses to interrogatories).

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
May 24, 2023
Page 3

**Interrogatory No. 11 (Lost Profits Damages)**.  Interrogatory No. 11 seeks information concerning TaKaDu's alleged lost profit damages.  TaKaDu's response is deficient.  The sole alleged lost sale that TaKaDu identifies is to a customer in Australia which, of course, is not relevant to its claims for lost profits associated with alleged infringement of United States patents.  More fundamentally, TaKaDu fails to address the *Panduit* factors, articulate a specific theory of lost profits damages, or state the total amount of lost profits it has incurred due to alleged infringement by Innovyze.  Moreover, TaKaDu claims it has "already produced documents responsive to this information that shows an average gross margin of ▮▮▮▮▮ per contract," but fails to identify any such documents.  TaKaDu should be required to provide a meaningful response during fact discovery, including by citation to the full scope of actual evidence TaKaDu intends to rely on to support its claim for lost profits.  *See In re: Cyclobenzaprine* 2013 WL 12291705, at *2-3; *TQ Delta*, C.A. No. 15-614-RGA (D. Del Oct. 19, 2021); *see also Malico, Inc. v. Cooler Master USA, Inc.*, No. C 11-4537 RS, 2013 WL 4482503, at *9 (N.D. Cal. Aug. 20, 2013), *aff'd in part, vacated in part,* 594 F. App'x 621 (Fed. Cir. 2014) (disallowing admittance of evidence related to lost profits theory when that evidence was not disclosed in response to formal discovery).

**Interrogatory No. 17 (Financial Information)**.  Interrogatory No. 17 seeks financial information concerning TaKaDu's alleged practicing product, *i.e.*, TaKaDu's CEM Software.  This information is relevant, for example, to validity (*e.g.*, commercial success), the scope of the alleged inventions and infringement, damages, and TaKaDu's entitlement to an injunction.  TaKaDu has failed to provide a full and complete response.  TaKaDu's sole substantive response comprises providing top-level "sales" numbers for 2017-2022, and top level "revenue" numbers for 2017-2021.  But TaKaDu must provide the requested information:  (a) the number of sales or licenses, (b) the gross and net revenue from sales or licenses, (c) the gross and net profit from sales or licenses, (d) the costs associated with the sales or licenses, and (e) the unit selling or license price.  TaKaDu cannot refuse to provide this information and then try to introduce this (or related) information in its expert report after the close of fact discovery.  *See Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 58 (D.D.C. 1984) (granting motion to compel information relevant to commercial success of Plaintiff's products practicing inventions, including sales volumes).

\*    \*    \*

For the reasons stated above, Innovyze respectfully requests that the Court order TaKaDu to promptly provide full and complete responses to Interrogatories Nos. 4, 10, 11, 17.

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
May 24, 2023
Page 4

Respectfully,

*/s/ Samantha G. Wilson*

Samantha G. Wilson (No. 5816)

Attachments
Cc: All Counsel of Record (via e-mail)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| TAKADU LTD., | ) | |
| Plaintiff, | ) ) ) | C.A. No. 21-291-RGA-SRF |
| v. | ) ) | |
| INNOVYZE LLC, | ) ) ) | |
| Defendant. | ) ) | |

### [PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL

Whereas, Defendant Innovyze LLC ("Defendant") has moved for an order compelling Plaintiff TaKaDu Ltd. ("Plaintiff") to supplement its deficient responses to Interrogatories Nos. 4, 10, 11, and 17 seeking information concerning infringement and damages, and the Court having considered the motion and all papers, and other matters submitted in support of and in opposition to the motion,

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is GRANTED.

2. Plaintiff shall supplement its response to Innovyze's Interrogatory No. 4 to state the full scope of its factual and legal basis for its contentions of indirect infringement that it intends to rely on in any expert report by no later than June 5, 2023.

3. Plaintiff shall supplement its response to Innovyze's Interrogatories Nos. 10 and 11 to state the full scope of its factual and legal basis for its damages contentions that it intends to rely on in any expert report by no later than June 5, 2023.

4. Plaintiff shall supplement its response to Innovyze's Interrogatory No. 17 to include all financial information called for in Interrogatory No. 17 for TaKaDu's

Practicing Product by no later than June 5, 2023.


SO ORDERED, this _____ day of _____, 2023.


_____

THE HONORABLE SHERRY R. FALLON
UNITED STATES MAGISTRATE JUDGE

30401261.1

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TAKADU LTD.,

            Plaintiff,

    v.

INNOVYZE LLC,

            Defendant.

C.A. No. 21-291-RGA-MPT

## PLAINTIFF TAKADU LTD.'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT INNOVYZE LLC'S FIRST SET OF INTERROGATORIES NOS. 2, 3, 4, 6, 9, and 12

Pursuant to Fed. R. Civ. P. 33, Plaintiff TaKaDu Ltd., ("TaKaDu" or "Plaintiff") hereby submits the following second supplemental objections and responses to Defendant Innovyze LLC ("Innovyze" or "Defendant")'s First Set of Interrogatories Nos. 2, 3, 4, 6, 9, and 12 (collectively, the "Interrogatories").

## GENERAL OBJECTIONS

TaKaDu incorporates by references the General Objections from TaKaDu's October 17, 2022 objections and responses to Defendant's Interrogatories Nos. 1-12 and each such General Objection shall be deemed to be specifically incorporated in each response to each of TaKaDu's responses below.

Without obligating itself to do so, except to the extent required under the Federal Rules of Civil Procedure and applicable local rules, TaKaDu reserves the right to revise, change, or supplement its responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions, or legal theories that may apply.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 2:**

Describe the priority dates for the alleged inventions claimed in the Asserted Patents by, separately for each claim, stating the earliest priority date to which You contend the claim is entitled, describing all facts supporting the claimed priority date (including any alleged disclosure of the claimed invention in an earlier application), and identifying the three (3) persons most knowledgeable about, and all documents concerning, those facts.

**RESPONSE NO. 2**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, both identified in TaKaDu's initial disclosures, as persons who are knowledgeable about the priority dates for the alleged inventions claimed in the Asserted Patents. The earliest priority date for each Asserted Patent is as follows:

- U.S. Pat. No. 7,920,983 – March 4, 2010;
- U.S. Pat. No. 8,341,106 – December 7, 2011;
- U.S. Pat. No. 9,053,519 – February 13, 2012; and

- U.S. Pat. No. 9,568,392 – March 4, 2010.

In addition, TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SUPPLEMENTAL RESPONSE NO. 2**:    TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg, Haggai Scolnicov, and Amitai Armon, as persons who are knowledgeable about the priority dates for the alleged inventions claimed in the Asserted Patents.  Specifically, these individuals each have the most knowledge of the priority date for each of the Asserted Patents as follows:

- '983 Patent (Mr. Peleg and Mr. Scolnicov);

- '106 Patent (Mr. Scolnicov and Mr. Armon);

- '519 Patent (Mr. Scolnicov and Mr. Armon); and

- '392 Patent (Mr. Peleg and Mr. Scolnicov).

The earliest priority date for each Asserted Patent is as follows:

- U.S. Pat. No. 7,920,983 – March 4, 2010;

- U.S. Pat. No. 8,341,106 – December 7, 2011;

- U.S. Pat. No. 9,053,519 – February 13, 2012; and

- U.S. Pat. No. 9,568,392 – March 4, 2010.

TaKaDu has produced documents TAKADU_0000001-3616 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

In addition, TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.   TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 2**:   TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

TaKaDu has produced documents TAKADU_0000001-9605 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 3:**

Describe all alleged inventive concepts of the alleged inventions claimed in the Asserted Patents by, separately for each claim, identifying each alleged inventive concept and for each alleged inventive concept, identifying the element or combination of elements that recite the alleged inventive concept, describing all facts supporting a contention that it renders the claim patent eligible, and identifying three (3) persons most knowledgeable about, and all documents concerning, those facts.

**RESPONSE NO. 3**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, both identified in TaKaDu's initial disclosures, as persons who are knowledgeable about all inventive concepts of the inventions claimed in the Asserted Patents.  Information related to all inventive concepts of the inventions claimed in the Asserted Patents will be provided to Defendant during depositions and expert discovery.  In addition, TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SUPPLEMENTAL RESPONSE NO. 3**:    TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu  objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg, Haggai Scolnicov, and Amitai Armon as persons who are knowledgeable about all inventive concepts of the inventions claimed in the

Asserted Patents.  Specifically, these individuals each have the most knowledge of the inventive concepts discussed in the Asserted Claims as follows:

- '983 Patent: 1-3, 5, 10, 12-13, 16, 19-20 (Mr. Peleg and Mr. Scolnicov);

- '106 Patent: 1-4, 7, 22-23, 27, 29 (Mr. Scolnicov and Mr. Armon);

- '519 Patent: 1-5, 16-19, 22, 27 (Mr. Scolnicov and Mr. Armon); and

- '392 Patent: 1, 5-6, 12-14,  19, 27, 34 (Mr. Peleg and Mr. Scolnicov).

Information related to the inventive concepts of the inventions claimed in the Asserted Patents will be further disclosed in TaKaDu's second revised Initial Infringement Contentions. Further information related to all inventive concepts of the inventions claimed in the Asserted Patents will be provided to Defendant during depositions and expert discovery.  In addition, TaKaDu has produced documents TAKADU_0000001-3616 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 3**:  TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu  objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu

objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu states that the inventive concepts are represented in TaKaDu's second revised Initial Infringement Contentions as well as the abstracts and specifications of the '983 Patent, the '106 Patent, and the '519 Patent.  Further, TaKaDu will supplement this response in conjunction with any supplemental infringement contentions following the Court's claim construction ruling.  Additional information responsive to this interrogatory will be provided during depositions.

TaKaDu has produced documents TAKADU_0000001-9605 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 4:**

Describe Defendant's alleged infringement of the Asserted Patents by, separately for each Accused Product, stating each Asserted Claim allegedly infringed and for each such claim stating whether the alleged infringement is direct or indirect (contributory or inducement), describing Defendant's alleged infringing acts (and any third-party predicate acts of direct infringement), describing all facts supporting the alleged infringement, and identifying the three (3) persons most knowledgeable about, and all documents concerning, the alleged infringement.

**RESPONSE NO. 4**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu directs Defendant to its revised Initial Infringement Contentions served on September 12, 2022, and incorporates these revised Initial Infringement Contentions by reference into its response to this interrogatory.  In addition, TaKaDu has agreed to provide second revised Initial Infringement Contentions by November 16, 2022 as set forth in Seth Ostrow's email dated October 13, 2022, which may include additional information responsive to this interrogatory. TaKaDu's counsel, experts, and Innovyze's employees are knowledgeable about this Interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 4**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, as well as TaKaDu's counsel and experts as persons who are knowledgeable about TaKaDu's infringement claims of the Asserted Patents by Defendant.

Further, TaKaDu directs Defendant to its Complaint (D.I. 1), which details its claims for infringement. TaKaDu is asserting direct infringement of the Asserted Patents against Innovyze

pursuant to 35 U.S.C. § 271(a) by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Accused Products in the United States. Innovyze's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Products that embody the patented invention of the Asserted Patents. TaKaDu further contends that Innovyze has contracted to sell and has sold the Accused Products (in configurations generally similar to the allegations previously made herein) to customers and that Innovyze continues to make, use, sell, and/or offer to sell the Accused Products despite having knowledge of the Asserted Patents.

TaKaDu also asserts that Innovyze is liable for inducement of infringement by having, and continuing to, knowingly caused (or intended to cause) the direct infringement of the Asserted Patents by customers and users of the Accused Products pursuant to 35 U.S.C. § 271(b). Moreover, by having marketed and sold the Accused Products, TaKaDu contends that Innovyze is liable for inducement of infringement. By further having provided instructions on how to use the Accused Products, TaKaDu alleges that Innovyze is liable for inducement of infringement.

Pursuant to 35 U.S.C. § 271(c), TaKaDu alleges that Innovyze is liable for contributory infringement of the Asserted Patents by having sold or offered to sell and continuing to sell or offer to sell the Accused Products, and the components thereof, that comprise a material component of the invention embodied in the Asserted Patents, that are especially made or adapted for use in infringing the Asserted Patents, and that are not suitable for any substantial non-infringing use having knowledge that the Asserted Patents were being directly infringed by Customers and users. Innovyze is therefore liable for contributory infringement of the Asserted Patents.

Pursuant to 35 U.S.C. § 271(f), TaKaDu contends that Innovyze is liable for infringement of the Asserted Patents by knowingly supplying customers outside of the United States with components of the Accused Products, the components having no other substantial non-infringing use, and are not being staple articles or commodities of commerce. Further, TaKaDu asserts that the combination of components supplied by Innovyze to foreign entities would have infringed the Asserted Patents if such combination occurred within the United States.

Furthermore, as Innovyze learned of the '106 Patent and the '983 Patent from prior correspondence dating back to 2013, Innovyze's infringement of the '106 Patent and the '983 Patent was willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '106 Patent and the '983 Patent and thus having acted in reckless disregard of TaKaDu's patent rights.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 4**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which

constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu directs Innovyze to TaKaDu's second revised Initial Infringement Contentions for a claim by claim articulation for which forms the basis of its infringement theory.  Further, TaKaDu stated in its first Supplemental Response No. 4 that Innovyze first learned of the '983 Patent and the '106 Patent in early 2013 and the '519 Patent in March 2021.  Additional discovery of emails of Innovyze's employees will provide more definitive dates as to when Innovyze first learned of the Asserted Patents. Further, TaKaDu will supplement this response in conjunction with any supplemental infringement contentions following the Court's claim construction ruling.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 6:**

Describe Defendant's alleged willful infringement of the Asserted Patents by, separately for each alleged act of infringement, describing all facts and circumstances supporting Your contention that Defendant's alleged infringement was willful, and identifying the three (3) persons most knowledgeable about, and all documents concerning, Defendant's alleged willful infringement.

**RESPONSE NO. 6**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu alleges willful infringement of U.S. Pat. Nos. 7,920,983 and 8,341,106 against Defendant. TaKaDu previously engaged with Innovyze between 2013 and 2015 relating to the infringement of these patents and thus, were well-aware of the subject matter pertained therein. More specifically, TaKaDu sent its initial notice letter to Dr. Paul F. Boulos, President of Innovyze, Inc., on October 11, 2013. Innovyze's prior counsel responded to this letter on November 4, 2013. There was an additional letter sent to Innovyze by TaKaDu's counsel on December 1, 2014 in which Innovyze's prior counsel responded by letter on February 27, 2015. These letters asserted TaKaDu's rights to U.S. Pat. Nos. 7,920,983 and 8,341,106. TaKaDu is asserting willfulness at least as to these two patents, and that on information and belief and subject

to discovery TaKaDu expects to find that Innovyze had knowledge of the other two patents, U.S. Pat. Nos. 9,053,519 and 9,568,392 as well.

TaKaDu's counsel, experts, and Innovyze's employees are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 6**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu alleges willful infringement of the '519 Patent since sending a notice

letter to Innovyze's prior counsel in March 2021.  In addition, Innovyze has known about at least the '983 Patent and the '106 Patent as well as TaKaDu's product for about 10 years and yet has continued to sell and develop products that infringe upon each of these patents.  Further, Innovyze has not provided any documents or materials that would indicate that Innovyze had a good faith belief that the Accused Products were not infringing the Asserted Patents. TaKaDu expects that additional information will be uncovered during the depositions of Innovyze's witnesses.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 9:**

Describe all efforts to enforce, license, or otherwise monetize the Asserted Patents by identifying each attempt to enforce, license, or otherwise monetize the Asserted Patents and for each such attempt stating the date, describing the facts and circumstances, identifying any licenses that were executed, and identifying the three (3) persons most knowledgeable about, and all documents concerning, Your efforts to enforce, license, or otherwise monetize the Asserted Patents.

**RESPONSE NO. 9**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as

premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Amir Peleg is a person who is knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 9**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu identifies Amir Peleg, Aaron M. Lampert, and Dan Zehavi as persons who are knowledgeable about this interrogatory. TaKaDu has not yet licensed the

Asserted Patents separate from the Practicing Product.  TaKaDu has entered into license agreements for its Practicing Product with companies throughout the world including in Australia, South America, Europe, and the Far East.  Some examples follow.  In 2014, TaKaDu deployed its CEM system with AEGEA's concessionaire Aguas Guariroba, a company located in Brazil.  In addition, in May 2015, TaKaDu implemented its CEM system for Sydney Water, an Australian company.  TaKaDu provided its CEM system to Aguas de Antofagasta, an operator of a water distribution system in Chile's Antofagasta region.  TaKaDu provided its CEM system to Hagihon Ltd., Jerusalem's Water and Wastewater Works Company.  TaKaDu implemented its CEM system in Spain with Udal Sareak, which is a water utility in the Basque region of Spain fully owned by Conscorcio de Aguas del Gran Bilbao.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory including licenses, notice letters, and responses to notice letters.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 9**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that

it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu reiterates that it has never licensed the Asserted Patents. TaKaDu sent notice letters to the following companies to enforce some or all of the Asserted Patents:

- On or around August 2013, TaKaDu sent a letter alleging patent infringement to AGS – Administração e Gestão de Sistemas de Salubridade, SA for at least its AWARE-P product and other related products;

- On or around October 2013, TaKaDu sent a letter alleging patent infringement to Innovyze, Inc. for at least its PressureWatch component of Innovyze's Smart Water Network Portfolio;

- On or around December 2014, TaKaDu sent a letter alleging patent infringement to Suez Environment Company for at least its Aquadvanced performance tool and other related products;

- On or around January 2015, TaKaDu sent a letter alleging patent infringement to Addition, Lda. for at least its Monitor product;

- On or around August 2017, TaKaDu sent a letter alleging patent infringement to Xylem Inc. for at least its View and LeakView products;

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 12:**

Describe all theories and/or bases under which Plaintiff contends that it is entitled to an injunction if it proves infringement of any claims of the Asserted Patents, including all facts and evidence which support Plaintiff's claim to an injunction or which support any of the factors enumerated by the United States Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), and identifying the three (3) persons most knowledgeable about, and all documents concerning, such facts and evidence.

**RESPONSE NO. 12**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  Amir Peleg is a person who is knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 12**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order,  TaKaDu identifies Amir Peleg, Dan Zehavi, and Aaron Lampert as persons who are knowledgeable about this interrogatory.  Subject to additional discovery, TaKaDu should be entitled to an injunction upon proving infringement of the Asserted Patents.  The Accused

Products are competitive with TaKaDu's CEM.  TaKaDu believes it was precluded from submitting proposals from potential customers in the U.S. including water utilities and delivery systems because of the Accused Products.  This is based, in part, on similar activities occurring outside the U.S.  For example, there has been at least one instance in Australia in which Innovyze was awarded a contract in which TaKaDu submitted a proposal as well.  Based on this, it is more likely than that that during discovery TaKaDu will uncover instances in the U.S. in which either TaKaDu was unable to submit a proposal or TaKaDu and Innovyze submitted proposals to the same party, and which resulted in TaKaDu not being awarded the contract.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  As such, TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 12**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date

of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu states that the CEM product is practicing the inventive concepts in the Asserted Patents. Allowing Innovyze to continue to infringe and benefit from the inventive concepts in the Asserted Patents by offering for sale and selling the Accused Products to potential customers of TaKaDu results in irreparable injury to TaKaDu in which monetary damages are inadequate. Further, the balance of hardships sways in TaKaDu's favor as Innovyze has other non-infringing products that it offers for sale and sells to customers and thus, an injunction would not put Innovyze out of business as it has several other revenue sources. On the other hand, TaKaDu's main revenue source is its CEM product which practices the inventive concepts of the Asserted Patents. In addition, Innovyze was purchased by Autodesk, a $5 billion company, in 2021 for $1 billion. On the other hand, TaKaDu's revenues pale in comparison to Autodesk's and thus, the balance of hardships is clearly in favor of TaKaDu.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. As such, TaKaDu reserves the right to supplement and amend this interrogatory

consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant

produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

Dated: March 15, 2023

OF COUNSEL:

Seth H. Ostrow (admitted *pro hac vice*)
Robert P. Feinland (admitted *pro hac vice*)
Jason J. Poulos (admitted *pro hac vice*)
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536
sho@msf-law.com
rf@msf-law.com
jjp@msf-law.com

**BAYARD, P.A.**

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff TaKaDu Ltd.*

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TAKADU LTD.,

               Plaintiff,

    v.

INNOVYZE LLC,

               Defendant.

C.A. No. 21-291-RGA-SRF

**PLAINTIFF TAKADU LTD.'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT INNOVYZE LLC'S FIRST SET OF INTERROGATORIES (NOS. 1, 3, 7, 8, 10, AND 11) AND SECOND SET OF INTERROGATORIES (NO. 14) AND FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT INNOVYZE LLC'S THIRD SET OF INTERROGATORIES NOS. 15-21**

Pursuant to Fed. R. Civ. P. 33, Plaintiff TaKaDu Ltd., ("TaKaDu" or "Plaintiff") hereby submits the following supplemental objections and responses to Defendant Innovyze LLC ("Innovyze" or "Defendant")'s Interrogatories Nos. 1, 3, 7, 8, 10, 11, 14, and 15-21 (collectively, the "Interrogatories").

## GENERAL OBJECTIONS

TaKaDu incorporates by references the General Objections from TaKaDu's October 17, 2022 objections and responses to Defendant's Interrogatories Nos. 1-12 and TaKaDu's November 11, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 1-12, TaKaDu's November 14, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 13-14, TaKaDu's March 15, 2023 second supplemental objections and responses to Defendant's Interrogatories Nos. 2, 3, 4, 6, 9, and 12, and TaKaDu's April 3, 2023 objections and responses to Defendant's Interrogatories Nos. 15-21, and each such General

Objection shall be deemed to be specifically incorporated in each response to each of TaKaDu's responses below.

Without obligating itself to do so, except to the extent required under the Federal Rules of Civil Procedure and applicable local rules, TaKaDu reserves the right to revise, change, or supplement its responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions, or legal theories that may apply.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe the conception and reduction to practice of the alleged inventions claimed in the Asserted Patents by, separately for each claim, stating the date and describing the circumstances of conception, describing the contribution of each person who contributed to the conception, stating the date and describing the circumstances of reduction to practice, and identifying the three (3) persons most knowledgeable about, and all documents concerning, said conception and reduction to practice.

**RESPONSE NO. 1**:  TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects

to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, both identified in TaKaDu's initial disclosures, as persons who are knowledgeable about the conception and reduction to practice of the alleged inventions claimed in the Asserted Patents. Information related to the conception and reduction to practice of the inventions claimed in the Asserted Patents will be provided to Defendant during depositions. TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SUPPLEMENTAL RESPONSE NO. 1**:    TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), identifies Amir Peleg, Haggai Scolnicov, and Amitai Armon as knowledgeable about the conception and reduction to practice of the alleged inventions claimed in the Asserted Patents.  Specifically, these individuals each have knowledge of the Asserted Claims as follows:

- '983 Patent: 1-3, 5, 10, 12-13, 16, 19-20 (Mr. Peleg and Mr. Scolnicov);

- '106 Patent: 1-4, 7, 22-23, 27, 29 (Mr. Scolnicov and Mr. Armon);

- '519 Patent: 1-5, 16-19, 22, 27 (Mr. Scolnicov and Mr. Armon); and

- '392 Patent: 1, 5-6, 12-14,  19, 27, 34 (Mr. Peleg and Mr. Scolnicov).

In addition, the following individuals contributed to the inventions claimed in the Asserted Patents:

- '983 Patent (Mr. Peleg, Mr. Scolnicov, Mr. Armon, Uri Barkay, and Shai Gutner);

- '106 Patent (Mr. Scolnicov, Mr. Armon, Chaim Linhart, Lilach Bien, and Noam Petrank);

- '519 Patent (Mr. Scolnicov, Mr. Armon, Chaim Linhart, and Lilach Bien); and

- '392 Patent (Mr. Peleg, Mr. Scolnicov, Mr. Armon, Uri Barkay,  and Shai Gutner).

TaKaDu has produced documents TAKADU_0000001-3616 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 1**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu directs Innovyze to Exhibit A attached hereto.

TaKaDu has produced documents TAKADU_0000001-10526, TAKADU_0010532-33, TAKADU_0010534, TAKADU_0010535, TAKADU_0010536-8, TAKADU_0010539-53, TAKADU_0010557-59, TAKADU_0010580-83, TAKADU_0010584-5, TAKADU_0010586, TAKADU_0010587, TAKADU_0010588-89, TAKADU_0010590, TAKADU_0010593-96, TAKADU_0010597-99, TAKADU_0010606-10, TAKADU_0010611, TAKADU_0010616-17, TAKADU_0010618-20, TAKADU_0010621-22, TAKADU_0010636-38, TAKADU_0010639, and TAKADU_0010704, that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 3:**

Describe all alleged inventive concepts of the alleged inventions claimed in the Asserted Patents by, separately for each claim, identifying each alleged inventive concept and for each alleged inventive concept, identifying the element or combination of elements that recite the alleged inventive concept, describing all facts supporting a contention that it renders the claim patent eligible, and identifying three (3) persons most knowledgeable about, and all documents concerning, those facts.

**RESPONSE NO. 3**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, both identified in TaKaDu's initial disclosures, as persons who are knowledgeable about all inventive concepts of

the inventions claimed in the Asserted Patents.  Information related to all inventive concepts of the inventions claimed in the Asserted Patents will be provided to Defendant during depositions and expert discovery.  In addition, TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SUPPLEMENTAL RESPONSE NO. 3**:    TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu  objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg, Haggai Scolnicov, and Amitai Armon as persons who are knowledgeable about all inventive concepts of the inventions claimed in the Asserted Patents.  Specifically, these individuals each have the most knowledge of the inventive concepts discussed in the Asserted Claims as follows:

- '983 Patent: 1-3, 5, 10, 12-13, 16, 19-20 (Mr. Peleg and Mr. Scolnicov);

- '106 Patent: 1-4, 7, 22-23, 27, 29 (Mr. Scolnicov and Mr. Armon);

- '519 Patent: 1-5, 16-19, 22, 27 (Mr. Scolnicov and Mr. Armon); and

- '392 Patent: 1, 5-6, 12-14,  19, 27, 34 (Mr. Peleg and Mr. Scolnicov).

Information related to the inventive concepts of the inventions claimed in the Asserted Patents will be further disclosed in TaKaDu's second revised Initial Infringement Contentions. Further information related to all inventive concepts of the inventions claimed in the Asserted Patents will be provided to Defendant during depositions and expert discovery.  In addition, TaKaDu has produced documents TAKADU_0000001-3616 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 3**:  TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu  objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu states the following:

'983 Patent:

The inventive concept of claim 1 includes a method implemented on a computer of identifying and reporting a water utility network event including a leakage event associated with a first meter by statistically predicting meter data for the first meter based on second meter data from the water utility network and secondary data received from external sources representing one or more conditions affecting flow or consumption of water in the water utility network, where the first and second meter data represents flow or pressure of water in the network, and then comparing meter data for the first meter with the statistically predicted meter data for that meter and detecting if the received first meter data deviates from the statistically predicted meter data for the first meter by a statistical deviation.

The inventive concepts for dependent claims 2, 3, 5, 10, 12, and 13 include the combination of the inventive concept of claim 1 with the additional limitation(s) of each claim.

'106 Patent

The inventive concepts of claims 1 and 29 include a method implemented in a computerized water network monitoring system for determining and reporting that two or more candidate events, each of which having been determined not to be statistically significant enough to be reported as an events by itself, are related as a single, composite event of a given event type, where the event data representing the candidate events has been processed from anomalies received from the water network monitoring system and contain data fields including start time and magnitude and where an event combination rule is selected and used to determine whether the

candidate events are related and can be combined to form the composite event of the given event type.

The inventive concept of claim 23 includes the inventive concepts of claims 1 and 29 with the additional inventive concept that the tests applied by the combination rule includes the use of three tests: a first for determining whether two or more candidate events occurred at related locations in the network; a second for determining whether two or more candidate events occurred at near start times to one another; and a third for determining a permitted set of magnitudes or directions for the anomalies from which the candidate events were determined.

The inventive concepts for dependent claims 2, 3, 4, 7, 22, and 27 include the combination of the inventive concept of the claim(s) from which they depend with the additional limitations of each claim.

'519 Patent

The inventive concepts of claims 1, 16, and 22 include a computerized method, system or program code, respectively, for modeling assets such as pipes in a utility network by generating a mathematical graph of the assets and their characteristics which is created by generating mathematical graph elements representing the assets in GIS and asset management data and creating probable connections between assets where such connections are missing from the GIS and asset management data, and where creating the probable connections includes snapping assets together at junctions based on coordinate data in the GIS data, determining if an analyzed junction appears between only two other junctions and merging the two other junctions if the analyzed junction appears between only two other junctions, and identifying one or more flow monitoring zones (FMZs) based upon analyzing junction locations.

The inventive concepts for dependent claims 2-5, 17-19, and 27 include the combination of the inventive concept of the claim(s) from which they depend with the additional limitations of each claim.

In addition, TaKaDu directs Innovyze to Exhibit A attached hereto and to TaKaDu's brief in response to Innovyze's unsuccessful motion to dismiss (D.I. 13) as well as the Court's Order and memorandum opinion (D.I. 16) denying Innovyze's motion as these documents are relevant to this interrogatory as they provide further details of the inventive concepts described above.

TaKaDu has produced documents TAKADU_0000001-10526, TAKADU_0010857-860, TAKADU_0010732, TAKADU_0010943-957, TAKADU_0010868-872, TAKADU_0010535, TAKADU_0010539-553, TAKADU_0010958-968, TAKADU_0010613-615, TAKADU_0010532-533, TAKADU_0010936-938, TAKADU_0010618-620, TAKADU_0010634-636, TAKADU_0010642-644, TAKADU_0010929-931, TAKADU_0010677-692, TAKADU_0010800-802, TAKADU_0010569-571, and TAKADU_0010575-577 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 4:**

Describe Defendant's alleged infringement of the Asserted Patents by, separately for each Accused Product, stating each Asserted Claim allegedly infringed and for each such claim stating whether the alleged infringement is direct or indirect (contributory or inducement), describing

Defendant's alleged infringing acts (and any third-party predicate acts of direct infringement), describing all facts supporting the alleged infringement, and identifying the three (3) persons most knowledgeable about, and all documents concerning, the alleged infringement.

**RESPONSE NO. 4**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu directs Defendant to its revised Initial Infringement Contentions served on September 12, 2022, and incorporates these revised Initial Infringement Contentions by reference into its response to this interrogatory.  In addition, TaKaDu has agreed to provide second revised Initial Infringement Contentions by November 16, 2022 as set forth in Seth Ostrow's email dated October 13, 2022, which may include additional information responsive to this interrogatory.

TaKaDu's counsel, experts, and Innovyze's employees are knowledgeable about this Interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 4**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu identifies Amir Peleg and Haggai Scolnicov, as well as TaKaDu's counsel and experts as persons who are knowledgeable about TaKaDu's infringement claims of the Asserted Patents by Defendant.

Further, TaKaDu directs Defendant to its Complaint (D.I. 1), which details its claims for infringement.  TaKaDu is asserting direct infringement of the Asserted Patents against Innovyze pursuant to 35 U.S.C. § 271(a) by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Accused Products in the United States. Innovyze's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Products that embody the patented invention of the Asserted Patents. TaKaDu further contends that Innovyze has contracted to sell and has sold the Accused Products (in configurations generally similar to the allegations previously made herein) to customers and that Innovyze continues to make, use, sell, and/or offer to sell the Accused Products despite having knowledge of the Asserted Patents.

TaKaDu also asserts that Innovyze is liable for inducement of infringement by having, and continuing to, knowingly caused (or intended to cause) the direct infringement of the Asserted Patents by customers and users of the Accused Products pursuant to 35 U.S.C. § 271(b). Moreover, by having marketed and sold the Accused Products, TaKaDu contends that Innovyze is liable for inducement of infringement.  By further having provided instructions on how to use the Accused Products, TaKaDu alleges that Innovyze is liable for inducement of infringement.

Pursuant to 35 U.S.C. § 271(c), TaKaDu alleges that Innovyze is liable for contributory infringement of the Asserted Patents by having sold or offered to sell and continuing to sell or offer to sell the Accused Products, and the components thereof, that comprise a material component of the invention embodied in the Asserted Patents, that are especially made or adapted for use in infringing the Asserted Patents, and that are not suitable for any substantial non-infringing use having knowledge that the Asserted Patents were being directly infringed by

Customers and users. Innovyze is therefore liable for contributory infringement of the Asserted Patents.

Pursuant to 35 U.S.C. § 271(f), TaKaDu contends that Innovyze is liable for infringement of the Asserted Patents by knowingly supplying customers outside of the United States with components of the Accused Products, the components having no other substantial non-infringing use, and are not being staple articles or commodities of commerce. Further, TaKaDu asserts that the combination of components supplied by Innovyze to foreign entities would have infringed the Asserted Patents if such combination occurred within the United States.

Furthermore, as Innovyze learned of the '106 Patent and the '983 Patent from prior correspondence dating back to 2013, Innovyze's infringement of the '106 Patent and the '983 Patent was willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '106 Patent and the '983 Patent and thus having acted in reckless disregard of TaKaDu's patent rights.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 7:**

Describe the Practicing Products by, for each such product, identifying the entities that developed and/or offered such product, the internal and commercial names and model numbers, stating the date that such product was first and last offered for sale, identifying each claim of the Asserted Patents allegedly practiced by such product, and identifying the three (3) persons most knowledgeable about, and all documents concerning, such product.

**RESPONSE NO. 7**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks

documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu identifies that its service/system is called the Central Event Management System.   Amir Peleg is a person who is knowledgeable about this interrogatory. Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 7**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's

possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu identifies that its service/system is called the Central Event Management ("CEM"). CEM was launched by TaKaDu in 2010 and has undergone many updates and upgrades since then. TaKaDu identifies Amir Peleg, Haggai Scolnicov, and Boaz Zinkower as persons who are knowledgeable about this interrogatory. Further, the Asserted Claims practiced by CEM are as follows:

- '983 Patent: 1-3, 5, 10, 12-13, 16, 19-20;

- '106 Patent: 1-4, 7, 22-23, 27, 29;

- '519 Patent: 1-5, 16-19, 22, 27; and

- '392 Patent: 1, 5-6, 12-14, 19, 27, 34.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 7**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu directs Innovyze to Exhibits A-D attached hereto and further states that CEM was previously called Water Network Infrastructure Monitoring until around 2015 when TaKaDu changed the name of its product to Central Event Management (CEM). All versions of the Water Network Infrastructure Monitoring/CEM product embody the inventions claimed in the '983 Patent. Further, the first offer for sale of the Water Network Infrastructure Monitoring product was in or around the second quarter of 2010. The inventions claimed in the '106 Patent and '583 Patent were added in or used with versions of the Water Infrastructure Monitoring/CEM product within a year of their respective filing dates.

TaKaDu has produced documents TAKADU_0000001-10526, TAKADU_0010532-33, TAKADU_0010534, TAKADU_0010535, TAKADU_0010536-8, TAKADU_0010539-53, TAKADU_0010557-59, TAKADU_0010580-83, TAKADU_0010584-5, TAKADU_0010586,

TAKADU_0010587, TAKADU_0010588-89, TAKADU_0010590, TAKADU_0010593-96, TAKADU_0010597-99, TAKADU_0010606-10, TAKADU_0010611, TAKADU_0010616-17, TAKADU_0010618-20, TAKADU_0010621-22, TAKADU_0010636-38, TAKADU_0010639, and TAKADU_0010704 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 8:**

Describe compliance with the marking requirements of 35 U.S.C. § 287 for the Practicing Products by, separately for each such product and each Asserted Patent allegedly practiced by such product, describing your efforts to ensure that such product was marked, stating whether or not such product was marked, stating the time period(s) that such product was marked, and identifying the three (3) persons most knowledgeable about, and all documents concerning, such marking.

**RESPONSE NO. 8**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects

to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Amir Peleg is a person who is knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 8**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to and without waiving these objections and all general objections and subject to the Protective Order,  CEM is based on the technology covered by the Asserted Patents. Regarding the marking of the CEM product, TaKaDu currently has one customer in the U.S. which has been informed that the CEM product and its features are protected by the Asserted Patents.

TaKaDu identifies Amir Peleg, Haggai Scolnicov, and Eynat Mor as persons who are knowledgeable about this interrogatory and the CEM product.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 8**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu states that the CEM product was not physically or electronically marked prior to 2023. TaKaDu's clients in the U.S. were informed that CEM is covered by the Asserted Patents.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 10:**

Describe Plaintiff's alleged reasonable royalty damages, if any, by, without limitation, describing the date and circumstances surrounding the hypothetical negotiation, describing the proper apportionment of damages (including addressing the smallest salable patent-practicing unit), describing the impact, if any, of the Georgia-Pacific factors, identifying all supporting facts and circumstances, and identifying the three (3) persons most knowledgeable about, and all documents concerning, Plaintiff's recovery of reasonable royalty damages.

**RESPONSE NO. 10**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  Amir Peleg is a person who is knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 10**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu identifies Amir Peleg and Dan Zehavi as persons who are knowledgeable about this interrogatory.  A response to this interrogatory is premature as expert discovery has not yet commenced.  As such, TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.

**SECOND SUPPLEMENTAL RESPONSE NO. 10**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when

required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu states that it intends to rely on comparable licenses in connection with the reasonable royalty analysis. These comparable licenses will be produced in due course. TaKaDu will then further supplement this response. In addition, TaKaDu's damages expert will opine on the information sought in this interrogatory and thus, any response now is undoubtedly premature as expert discovery has not yet commenced.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.

**INTERROGATORY NO. 11:**

Describe Plaintiff's alleged lost profits damages, if any, by, separately for each Accused Product, stating the alleged amount of lost profits damages and describing the demand for the Accused Product, the absence of acceptable non-infringing alternatives, Plaintiff's manufacturing and marketing capability to exploit the demand, the amount of profit that Plaintiff would have made, and by identifying the three (3) persons most knowledgeable about, and all documents concerning, Plaintiff's recovery of lost profits.

**RESPONSE NO. 11**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks

documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. Amir Peleg is a person who is knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 11**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks

information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu identifies Amir Peleg and Dan Zehavi as persons who are knowledgeable about this interrogatory. The Accused Products are competitive with TaKaDu's CEM. TaKaDu believes it was precluded from submitting proposals from potential customers in the U.S. including water utilities and delivery systems because of the Accused Products. This is based, in part, on similar activities occurring outside the U.S. For example, there has been at least one instance in Australia in which Innovyze was awarded a contract in which TaKaDu submitted a proposal as well. Based on this, it is more likely than that that during discovery TaKaDu will uncover instances in the U.S. in which either TaKaDu was unable to submit a proposal or TaKaDu and Innovyze submitted proposals to the same party, and which resulted in TaKaDu not being awarded the contract.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged

documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  As such, TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SECOND SUPPLEMENTAL RESPONSE NO. 11**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that is publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu states that it contends it lost sales only on the CEM product.   On such instance involved Logan Water in Queensland, Australia.  In 2017, Innovyze and TaKaDu submitted competing bids in which TaKaDu lost.  In 2022, Logan Water switched from Innovyze's

system to TaKaDu's system. As a result, TaKaDu lost 5 years of revenue. In addition, TaKaDu has lost opportunities to submit RFPs and bids for other projects in the United States as a result of Innovyze's presence in the marketplace.

In terms of sales, TaKaDu averages about ▉▉▉ new sales per year and has around ▉ current contracts with customers. There was approximately half this amount five years ago. Some of the current contracts are long-term contracts for multiple years and others are on pilot contracts.

TaKaDu's competitors in the field include, but are not limited to, Innovyze, Baseform, BuntPlanet, Royal Huskin, Suez, Xylem, and Bentley Systems.

In regards to the average profit, TaKaDu already produced documents responsive to this information that shows an average gross margin of ▉▉▉ per contract.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. As such, TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**<u>INTERROGATORY NO. 14:</u>**

Describe all alleged objective indicia of non-obviousness of the alleged inventions of the Asserted Patents by, separately for each claim, identifying each alleged objective indicia of non-obviousness, describing any nexus to the claimed invention (or any reliance on a presumption of nexus), describing all facts supporting the alleged objective indicia of non-obviousness, and

identifying persons knowledgeable about, and all documents concerning, the alleged indicia of non-obviousness.

**RESPONSE NO. 14**:  TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), identifies Amir Peleg, Haggai Scolnicov, and Boaz Zinkower as persons knowledgeable about objective indicia of non-obviousness of the inventions of the Asserted Patents.  Information related to objective indicia of non-obviousness of the inventions claimed in the Asserted Patents will be further provided during discovery.

TaKaDu will search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**SUPPLEMENTAL RESPONSE NO. 14**:    TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine.  TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu states that it has produced responsive documents which include various case studies such as one from Unity Water and one from the Knoxville Utilities Board in Tennessee that demonstrates the commercial success of the CEM product.  Additional examples of case studies showing commercial success of the CEM product include one from AGEA: Aguas Guariroba (*see* TAKADU_0009513-14), one from Udal Sareak located in Bilbao, Spain (*see* TAKADU_0009505-6), and another from Hagihon Ltd based in Jerusalem, Israel (*see* TAKADU_0009539-40).  *See also* TAKADU_0009426-27 and TAKADU_0009580-81.

TaKaDu has also provided responsive documents related to the long felt, but unsolved need for the inventive concepts in the Asserted Patents such as the article titled Bringing Advanced Information Technology to Water Management – Proposed Educational Organization authored by Peter Williams.  *See* TAKADU_0009924-30.

Unexpected results of the CEM product, which practices the inventive concepts of the Asserted Patents, included the ability to reduce repair cycle in water networks by 60% and the ability to improve data integrity and data availability. *See, e.g.,* TAKADU_0010673.

Upon information and belief, Bentley Systems, one of Innovyze's biggest competitors, attempted to develop a similar product and this product failed. *See* TAKADU_0010975-76.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 15:**

Describe how the Practicing Products practice the alleged inventions claimed in the Asserted Patents by, separately for each Practicing Product and each claim allegedly practiced by that Practicing Product, providing a limitation-by-limitation claim chart stating whether each limitation is met literally and/or under the doctrine of equivalents, explaining how the limitation is met, identifying all facts supporting Your contention that the limitation is met (including citations to source code), and identifying the three (3) persons most knowledgeable about, and all documents concerning, how the limitation is met.

**RESPONSE NO. 15**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as

premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory. TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis. TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu has produced responsive, non-privileged documents and will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. Further, TaKaDu will have its source code available for review by Innovyze in due course. Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 15**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu. TaKaDu objects to this

interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory as premature to the extent it calls for expert testimony or analysis.  TaKaDu will produce its expert reports when required to do so according to the Court's Scheduling Order (D.I. 25) and the Federal Rules of Civil Procedure and will modify and/or supplement this response in light of expert testimony or analysis.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu directs Innovyze to Exhibits A-D attached hereto.

TaKaDu has produced documents TAKADU_0000001-10526, TAKADU_0010527, TAKADU_0010532-33, TAKADU_0010613-15, TAKADU_001023-24, TAKADU_0010677-692, TAKADU_0010732, TAKADU_0010800-02, TAKADU_0010849, and TAKADU_0010857-60 as well as the source code for the CEM product that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 16:**

Describe the first time that each Practicing Product practiced or embodied the alleged inventions claimed in the Asserted Patents by, separately for each Practicing Product and each claim allegedly practiced or embodied by that Practicing Product, stating the date that the Practicing Product first practiced or embodied the alleged invention, and identifying the three (3) persons most

knowledgeable about, and all documents concerning, the Practicing Product first practicing or embodying the alleged invention.

**RESPONSE NO. 16**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu has produced responsive, non-privileged documents and will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 16**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents

that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu directs Innovyze to Exhibits A-D attached hereto.

TaKaDu has produced documents TAKADU_0000001-10526, TAKADU_0010532-33, TAKADU_0010534, TAKADU_0010535, TAKADU_0010536-8, TAKADU_0010539-53, TAKADU_0010557-59, TAKADU_0010580-83, TAKADU_0010584-5, TAKADU_0010586, TAKADU_0010587, TAKADU_0010588-89, TAKADU_0010590, TAKADU_0010593-96, TAKADU_0010597-99, TAKADU_0010606-10, TAKADU_0010611, TAKADU_0010616-17, TAKADU_0010618-20, TAKADU_0010621-22, TAKADU_0010636-38, TAKADU_0010639, and TAKADU_0010704 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant(s) proceeds.

**INTERROGATORY NO. 17:**

Describe TaKaDu's sales or licensing of each Practicing Product on a quarterly basis by, without limitation, stating (a) the number of sales or licenses, (b) the gross and net revenue from sales or licenses, (c) the gross and net profit from sales or licenses, (d) the costs associated with the sales or licenses, and (e) the unit selling or license price.

**RESPONSE NO. 17**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu has produced at least documents TAKADU_0009606 - TAKADU_0009715 that are responsive to this interrogatory and TaKaDu will continue to search for and produce any responsive, non-privileged documents within its possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 17**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession,

custody, or control. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu directs Innovyze to TAKADU_0009672 - TAKADU_0009715 that are responsive to this interrogatory. The financial information provided in these documents is directly related to the sale of the Central Management Event system as that is the only product that TaKaDu offers to customers.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 18:**

Describe TaKaDu's first awareness of Innovyze's water distribution, modeling, and management software (including InfoWorks WS, InfoWorks WS Pro, InfoWorks WS Live, IWLive Pro, SCADAWatch, and Info360) by, separately for each software, stating the date that TaKaDu first became aware of the software, describing the circumstances under which TaKaDu first became aware of the software, and identifying the three (3) persons most knowledgeable about, and all documents concerning, that awareness.

**RESPONSE NO. 18**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or

control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu first became aware of certain products and services offered for sale by Innovyze, including the PressureWatch component of Innovyze's Smart Water Network Portfolio, at least as early as October 11, 2013. TaKaDu first became aware of other products and services offered for sale by Innovyze, such as the DemandWatch and Infinity System components of Innovyze's Smart Water Network Portfolio, at least as early as December 1, 2014. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 18**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu first became aware of certain products and services offered for sale by Innovyze, including the PressureWatch component of Innovyze's Smart Water Network Portfolio, at least as early as mid-2013. TaKaDu first became aware of

other products and services offered for sale by Innovyze, such as the DemandWatch and Infinity System components of Innovyze's Smart Water Network Portfolio, at least as early as July 26, 2014 after seeing online announcements of these products made by Innovyze. *See e.g.*, TAKADU_0010994-97.

Further, on or around December 16, 2020, TaKaDu first learned of Innovyze's offering for sale of Info360 when Innovyze announced online that its new Software-as-a-Service platform called Info360.com was launching.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 19:**

Describe TaKaDu's first awareness of Innovyze's (including predecessor MHW Soft) alleged infringement of the Asserted Patents by, separately for each Asserted Patent, stating the date that TaKaDu first learned of Innovyze's alleged infringement, identifying the alleged infringing software or product, describing the facts and circumstances surrounding TaKaDu's first knowledge, and identifying the three (3) persons most knowledgeable about, and all documents concerning, TaKaDu's first knowledge of the alleged infringement.

**RESPONSE NO. 19**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or

control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu first became aware of Innovyze's infringement of at least U.S. Patent No. 7,920,983 (the "'983 Patent") by certain products and services offered for sale by Innovyze, including the PressureWatch component of Innovyze's Smart Water Network Portfolio, at least as early as October 11, 2013. TaKaDu first became aware of Innovyze's infringement of at least the '983 Patent by other products and services offered for sale by Innovyze, such as the DemandWatch and Infinity System components of Innovyze's Smart Water Network Portfolio, at least as early as December 1, 2014. Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery. Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 19**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu first became aware of Innovyze's infringement of at least the '983 Patent by certain products and services offered for sale by

Innovyze, including the PressureWatch component of Innovyze's Smart Water Network Portfolio, at least as early as mid-2013.  TaKaDu first became aware of Innovyze's infringement of at least the '983 Patent and '106 Patent by other products and services offered for sale by Innovyze, such as the DemandWatch and Infinity System components of Innovyze's Smart Water Network Portfolio, at least as early as November 2014.

TaKaDu first became aware of Innovyze's infringement of at least the '519 Patent by other products and services offered for sale by Innovyze, such as Info360 in late December 2020.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 20:**

Describe all steps that TaKaDu took to enforce the Asserted Patents against Innovyze (including predecessor MWH Soft) by, separately for each Asserted Patent, stating each date that TaKaDu took any action(s) to enforce the Asserted Patent against Innovyze, describing the action(s) that TaKaDu took to enforce the Asserted Patent, and identifying the three (3) persons most knowledgeable about, and all documents concerning, TaKaDu's action(s).

**RESPONSE NO. 20**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu took at least the following steps to enforce the Asserted Patents against Innovyze: 1. Sending a letter enforcing at least the '983 Patent to Dr. Paul F. Boulos, President of Innovyze, Inc., on October 11, 2013; 2. Sending a letter enforcing at least the '983 Patent to Mr. Al Wiedmann Jr., of Santangelo Law Offices, P.C., on December 1, 2014; 3. Sending a letter enforcing the Asserted Patents to Mr. Luke Santangelo, Esq., of Santangelo Law Offices, P.C., on March 7, 2021; and 4. Filing the present lawsuit on February 25, 2021.  Additionally, information responsive to this interrogatory will be disclosed during depositions and expert discovery.  Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 20**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections, TaKaDu took at least the following steps to enforce the Asserted Patents against Innovyze: 1. Sending a letter enforcing at least the '983 Patent to Dr. Paul F. Boulos, President of Innovyze, Inc., on October 11, 2013; 2. Sending a letter enforcing at least the '983 Patent to Mr. Al Wiedmann Jr., of Santangelo Law Offices, P.C., on

December 1, 2014; 3. Sending a letter enforcing the Asserted Patents to Mr. Luke Santangelo, Esq., of Santangelo Law Offices, P.C., on March 7, 2021; and 4. Filing the present lawsuit on February 25, 2021.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**INTERROGATORY NO. 21:**

Describe TaKaDu's awareness of any potential or actual sales of Innovyze by, without limitation, stating the date that TaKaDu first learned that any EQT was or was considering selling any interest in Innovyze and describing the surrounding facts and circumstances, stating the date that TaKaDu first learned that any EQT was or was considering selling any interest in Innovyze to Autodesk and describing the surrounding facts and circumstances, and identifying the three (3) persons most knowledgeable about, and all documents concerning such knowledge.

**RESPONSE NO. 21**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu has produced responsive, non-privileged documents and will continue to search for and produce any responsive, non-privileged documents within its

possession, custody, or control in response to this interrogatory. Additionally, information responsive to this interrogatory will be disclosed during depositions. Amir Peleg and Haggai Scolnicov are persons who are knowledgeable about this interrogatory.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

**SUPPLEMENTAL RESPONSE NO. 21**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to the aforementioned objections and subject to the Protective Order and pursuant to Fed. R. Civ. P. 33(d), TaKaDu first learned that EQT was considering selling any interest in Innovyze was around December 20, 2020. TaKaDu learned that the private equity fund that owned Innovyze planned to initiate a sale process in the first quarter of 2021. TaKaDu first learned that EQT was selling or considering selling any interest in Innovyze to Autodesk on February 24, 2021, when Autodesk announced that it has signed an agreement to acquire Innovyze for $1 billion.

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

Dated: May 5, 2023

OF COUNSEL:

Seth H. Ostrow (admitted *pro hac vice*)
Robert P. Feinland (admitted *pro hac vice*)
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536
sho@msf-law.com
rf@msf-law.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff*
*Arthrodesis Technologies LLC*

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TAKADU LTD.,

               Plaintiff,

    v.

INNOVYZE LLC,

               Defendant.

C.A. No. 21-291-RGA-SRF

**CONTAINS HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY INFORMATION**

## PLAINTIFF TAKADU LTD.'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANT INNOVYZE LLC'S INTERROGATORY NO. 17

Pursuant to Fed. R. Civ. P. 33, Plaintiff TaKaDu Ltd., ("TaKaDu" or "Plaintiff") hereby submits the following supplemental objections and responses to Defendant Innovyze LLC ("Innovyze" or "Defendant")'s Interrogatory No. 17 (collectively, the "Interrogatory").

## GENERAL OBJECTIONS

TaKaDu incorporates by references the General Objections from TaKaDu's October 17, 2022 objections and responses to Defendant's Interrogatories Nos. 1-12 and TaKaDu's November 11, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 1-12, TaKaDu's November 14, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 13-14, TaKaDu's March 15, 2023 second supplemental objections and responses to Defendant's Interrogatories Nos. 2, 3, 4, 6, 9, and 12, and TaKaDu's April 3, 2023 objections and responses to Defendant's Interrogatories Nos. 15-21, and each such General Objection shall be deemed to be specifically incorporated in each response to each of TaKaDu's responses below.

Without obligating itself to do so, except to the extent required under the Federal Rules of Civil Procedure and applicable local rules, TaKaDu reserves the right to revise, change, or

1

supplement its responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions, or legal theories that may apply.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 17:**

Describe TaKaDu's sales or licensing of each Practicing Product on a quarterly basis by, without limitation, stating (a) the number of sales or licenses, (b) the gross and net revenue from sales or licenses, (c) the gross and net profit from sales or licenses, (d) the costs associated with the sales or licenses, and (e) the unit selling or license price.

**THIRD SUPPLEMENTAL RESPONSE NO. 17**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks documents that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.  TaKaDu further objects to this interrogatory to the extent that it is seeks information related to activities or revenues outside the United States and that pursuant to the agreement during the parties' meet and confer on May 11, 2023, TaKaDu is limiting its responses to U.S. activities and revenues only.

2



TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

Dated: May 17, 2023

OF COUNSEL:

Seth H. Ostrow (admitted *pro hac vice*)
Robert P. Feinland (admitted *pro hac vice*)
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536
sho@msf-law.com
rf@msf-law.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Plaintiff*
*TaKaDu Ltd.*

4

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAKADU LTD.,<br><br>                    Plaintiff,<br><br>        v.<br><br>INNOVYZE LLC,<br><br>                    Defendant. | C.A. No. 21-291-RGA-MPT |

## PLAINTIFF TAKADU LTD.'S THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSE TO DEFENDANT INNOVYZE LLC'S INTERROGATORY NO. 9

Pursuant to Fed. R. Civ. P. 33, Plaintiff TaKaDu Ltd., ("TaKaDu" or "Plaintiff") hereby submits the following third supplemental objections and response to Defendant Innovyze LLC ("Innovyze" or "Defendant")'s Interrogatory No. 9 (collectively, the "Interrogatories").

## GENERAL OBJECTIONS

TaKaDu incorporates by references the General Objections from TaKaDu's October 17, 2022 objections and responses to Defendant's Interrogatories Nos. 1-12 and TaKaDu's November 11, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 1-12, TaKaDu's November 14, 2022 supplemental objections and responses to Defendant's Interrogatories Nos. 13-14, TaKaDu's March 15, 2023 second supplemental objections and responses to Defendant's Interrogatories Nos. 2, 3, 4, 6, 9, and 12, and TaKaDu's April 3, 2023 objections and responses to Defendant's Interrogatories Nos. 15-21, and each such General Objection shall be deemed to be specifically incorporated in each response to each of TaKaDu's responses below.

Without obligating itself to do so, except to the extent required under the Federal Rules of Civil Procedure and applicable local rules, TaKaDu reserves the right to revise, change, or

supplement its responses as additional facts or documents are discovered, revealed, recalled, or otherwise ascertained, and as further analysis, research, investigation, and discovery disclose additional facts, documents, contentions, or legal theories that may apply.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 9:**

Describe all efforts to enforce, license, or otherwise monetize the Asserted Patents by identifying each attempt to enforce, license, or otherwise monetize the Asserted Patents and for each such attempt stating the date, describing the facts and circumstances, identifying any licenses that were executed, and identifying the three (3) persons most knowledgeable about, and all documents concerning, Your efforts to enforce, license, or otherwise monetize the Asserted Patents.

**THIRD SUPPLEMENTAL RESPONSE NO. 9**: TaKaDu incorporates by reference its general objections as if fully set forth in response to this interrogatory. TaKaDu objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or attorney work-product doctrine. TaKaDu objects to this interrogatory as unduly burdensome because it seeks information that are publicly available, equally accessible to Defendant, or already in Defendant's possession, custody, or control. TaKaDu objects to this interrogatory to the extent that it seeks documents or information outside the possession, custody, or control of TaKaDu.  TaKaDu objects to this interrogatory as premature, in that it seeks expert opinions before the required date of disclosure. TaKaDu objects to this interrogatory as containing multiple subparts, each of which constitutes an individual interrogatory.

Subject to and without waiving these objections and all general objections and subject to the Protective Order, TaKaDu reiterates that it has never licensed the Asserted Patents.  TaKaDu sent notice letters to the following companies to enforce some or all of the Asserted Patents:

- On or around August 2013, TaKaDu sent a letter alleging patent infringement to AGS – Administração e Gestão de Sistemas de Salubridade, SA;

- On or around October 2013, TaKaDu sent a letter alleging patent infringement to Innovyze, Inc. for at least its PressureWatch component of Innovyze's Smart Water Network Portfolio;

- On or around December 2014, TaKaDu sent a letter alleging patent infringement to Suez Environment Company for at least its Aquadvanced performance tool and other related products;

- On or around January 2015, TaKaDu sent a letter alleging patent infringement to Addition, Lda. for at least its Monitor product;

- On or around August 2017, TaKaDu sent a letter alleging patent infringement to Xylem Inc. for at least its View and LeakView products;

TaKaDu reserves the right to supplement and amend this interrogatory consistent with the Court's Rules and Orders, as additional discovery is obtained, when Defendant produces its expert reports, and as the investigation and analysis by any expert consultant proceeds.

Dated: May 19, 2023                          BAYARD, P.A.


                                             /s/ Stephen B. Brauerman
OF COUNSEL:                                  Stephen B. Brauerman (#4952)
                                             Ronald P. Golden III (#6254)
Seth H. Ostrow (admitted *pro hac vice*)     600 N. King Street, Suite 400
Robert P. Feinland (admitted *pro hac vice*) Wilmington, DE 19801
**MEISTER SEELIG & FEIN LLP**                (302) 655-5000
125 Park Avenue, 7th Floor                   sbrauerman@bayardlaw.com
New York, NY 10017                           rgolden@bayardlaw.com
Telephone: (212) 655-3500
Facsimile: (212) 655-3536                    *Attorneys for Plaintiff*
sho@msf-law.com                              *Arthrodesis Technologies LLC*
rf@msf-law.com

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TQ DELTA, LLC,        :

            :

         Plaintiff,          :

            :         Civil Action No. 15-614-RGA

    v.              :

            :

            :

DISH NETWORK CORPORATION, *et al.*,      :

            :

         Defendants.       :

## SPECIAL MASTER ORDER #6 – RULING ON DISH DEFENDANTS' MOTION TO COMPEL PLAINTIFF TQ DELTA, LLC TO PROVIDE A MORE COMPLETE DISCLOSURE UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iii) AND A MORE COMPLETE RESPONSE TO DISH'S INTERROGATORY NO. 1

### I.  INTRODUCTION

Pending before the Special Master is Defendants DISH Network Corp., DISH Network LLC, DISH DBS Corp., and DISH Technologies L.L.C.'s (collectively "DISH") motion to compel Plaintiff TQ Delta, LLC ("TQ Delta") to provide a more complete disclosure under Federal Rule of Civil Procedure 26(a)(1)(A)(iii) and a more complete response to DISH's Interrogatory No. 1 (the "Motion").  TQ Delta opposes the Motion on grounds that it has provided sufficient damages-related disclosures through its Rule 26 disclosures and responses to Interrogatory No. 1, including supplements thereto.  After considering the written submissions of the parties, for the reasons set forth below, IT IS HEREBY ORDERED that the Motion is GRANTED.

## II.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiff initiated this action on July 17, 2015 alleging that DISH infringed seven (7) of TQ Delta's patents.[1]  (D.I. 1).  On November 23, 2015, TQ Delta served DISH with its initial disclosures.  (D.I. 28)  On May 6, 2016, DISH served TQ Delta with DISH's First Set of Interrogatories to TQ Delta, which included Interrogatory No. 1. (D.I. 73).  Interrogatory No. 1 specifically seeks:

> For each Asserted Patent, describe the full factual and legal bases for TQ Delta's damages claims against DISH, including but not limited to: (1) the amount of damages sought as to each Accused Product; (2) the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount, if any; (3) the type of damages sought (e.g., lost profits, established royalty, reasonable royalty, etc.); (4) all allegedly comparable licenses or settlement agreements and the factual circumstances related to each such license or settlement agreement; (5) the date of the purported hypothetical negotiation, if any; (6) all factors, including those described under *Georgia-Pacific Corp. v. U.S Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), that TQ Delta contends support its damages claims and a description of how each such factor allegedly supports its claims; and (7) all evidence allegedly supporting TQ Delta's contentions with respect to the above.

On or about June 9, 2016, TQ Delta served DISH with its objections and response to Interrogatory No. 1. (D.I. 87).

On December 20, 2016, the Court stayed this litigation pending resolution of *Inter Partes Reviews* ("IPRs") relating to the patents-in-suit. (D.I. 214).  Only two (2) of the eight (8) asserted patents survived the IPRs – the '158 patent and the '243 patent.  On April 13, 2021, the Court lifted the stay and implemented an amended case schedule.  (D.I. 238).  In accordance with the

---

[1] On September 9, 2015, TQ Delta filed a First Amended Complaint for Patent Infringement alleging infringement of an eighth patent that issued after TQ Delta filed its original Complaint. (D.I. 7).

amended case schedule, on May 21, 2021, TQ Delta served a supplemental objection and response to Interrogatory No. 1. (D.I. 249).

On July 1, 2021, DISH raised deficiencies regarding TQ Delta's responses to it damages discovery, including TQ Delta's failure to provide a computation of damages and identification of supporting material required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii) ("Rule 26(a)(1)(A)(iii)"), and requested that TQ Delta produce all licenses to the asserted patents. (Op. Br., Ex. C). On July 13, 2012, TQ Delta agreed to supplement its response to Interrogatory No. 1. On July 28, 2021, TQ Delta served DISH with its second supplemental response to Interrogatory No. 1 (the "Second Supplemental Response"). (D.I. 278). On August 6, 2021, DISH informed TQ Delta of the continued deficiencies that existed in the Second Supplemental Response. On August 30, 2021, DISH and TQ Delta met and conferred and, as a result, TQ Delta agreed to supplement its initial disclosures and to supplement its response to Interrogatory No. 1 for the third time.

On September 14, 2021, TQ Delta served DISH with its First Supplemental Rule 26(a)(1) Initial Disclosures ("Supplemental Rule 26(a)(1) Disclosures") and its Third Supplemental Objection and Response to Interrogatory No. 1 ("Third Supplemental Response").[2] (D.I. 306). On September 27, 2021, the parties met and conferred and agreed that they were at an impasse regarding the adequacy of TQ Delta's Damages Disclosures.

---

[2] The Supplemental Rule 26(a)(1) Disclosures and the Third Supplemental Response are substantively identical and, therefore, are collectively referred to as "TQ Delta's Damages Disclosures." The Supplemental Rule 26(a)(1) Disclosures are attached to DISH's opening brief at Exhibit A, and TQ Delta's answering brief at Exhibit B, and are cited to as "R. 26. Discl. at _." The Third Supplemental Response is attached to DISH's opening brief at Exhibit B, and TQ Delta's answering brief at Exhibit A, and are cited to as "Rog. 1 Resp. at _."

Accordingly, on October 1, 2021, DISH filed the Motion and lodged its opening letter brief ("Op. Br."). DISH asserts that, to date in this litigation, "TQ Delta has yet to identify: i) a single comparable license in its possession; ii) the DISH products and services that may be part of a damages royalty base; and iii) any other factual damages information." (Op. Br. at 1). Thus, DISH requests the Court to enter an Order compelling TQ Delta to provide its Rule 26(a)(1)(A)(iii) computation of damages, and a complete response to Interrogatory No. 1, including an identification of what constitutes the royalty base, the appropriate royalty rate, comparable licenses, the incorporation of convoyed or collateral sales in the damages analysis, the incorporation of recurring or subscription revenue in the damages analysis, and the identification of all documents that TQ Delta will rely upon to support its damages allegations.

On October 8, 2021, TQ Delta submitted its answering letter brief opposing the Motion ("Ans. Br."). TQ Delta contends that it has provided DISH with "sufficiently thorough damages-related disclosures in the form of its Rule 26 disclosures and interrogatory responses . . . particularly given the stage of the proceedings." (Ans. Br. at 1). Specifically, TQ Delta contends that its Damages Disclosures sufficiently provide DISH with its damages-related disclosures because they "set forth more than nine pages of legal and factual bases for its damages claim." (Ans. Br. at 1). More specifically, TQ Delta contends that it has disclosed the following in its Rule 26 damages disclosure and response to Interrogatory No. 1, including supplements:

- [TQ Delta] intends to seek damages under a reasonable royalty calculation, plus interest and costs, treble damages, and attorneys' fees beginning from the date of issuance of the patents-in-suit, including damages for units deployed prior to this date but utilized afterwards. ([Rog. 1 Resp.] at 13-14; [R. 26 Discl.] at 7.)

- [TQ Delta] indicated that it is not seeking lost profits. ([Rog. 1 Resp.] at 14; [R. 26 Discl.] at 7.)

- Among the generally accepted methods to determine a reasonable royalty, [TQ Delta] identified are the Analytical Method and the Hypothetical Negotiation Approach and provides a description of each approach, including the *Georgia-Pacific* factors TQ Delta's expert may consider. ([Rog. 1 Resp.] at 14-15; [R. 26 Discl.] at 8-9.)

- [TQ Delta] also indicated that it may pursue one or more of the following methods for assessing patent damages: Income Approach, Market Approach, and Cost Approach, with a description of each. ([Rog. 1 Resp.] at 17-18; [R. 26 Discl.] at 7, 10-14.)

- Under the Income Approach, which [TQ Delta] indicated focuses on the economic value, [TQ Delta] identified the types of information and specific information the expert may rely upon, including "units, revenues, costs, and margins[,]" as well as a description of the state of the demand for and adoption of MoCA and the identification of a number of different sources for such information. ([Rog. 1 Resp.] at 18-19; [R. 26 Discl.] at 11-12.)

- Under the Market Approach, which [TQ Delta] indicated "involves an analysis of arm's length market transactions between unrelated parties for the same or similar intellectual property[,]" [TQ Delta] indicated that it may rely on similar or comparable license or settlement agreements and cited a number of potential comparable agreements. For example, [TQ Delta] stated that "[o]ne potentially comparable benchmark for the Market Approach is TiVO's offer to license as posted on its website[,]" for which [TQ Delta] provided details of the running royalty and initial fee offers. ([Rog. 1 Resp.] at 19-20.) Similarly, [TQ Delta] cited to another TiVO settlement as "[a]nother potentially comparable benchmark…" and further elaborated regarding the same. (*Id.*) [TQ Delta] further disclosed a number of licenses "that may encompass the asserted patents" and directed DISH to specific Bates ranges of Aware licenses (the predecessor-in-interest of [TQ Delta]) and [TQ Delta] license agreements. In addition, [TQ Delta] identified a number of license agreement produced by DISH. (*Id.* at 20-21.)

- TQ Delta further stated that it "may rely upon Defendant's financial performance associated with sale/rental/lease/deployment and/or other benefits or consideration derived directly or indirectly from the Accused Products and/or the services employing the same." (*Id.* at 15.) In

5

addition, [TQ Delta] cited to several exemplary DISH documents as examples of such information upon which it may rely. (*Id.* at 16.)

- [TQ Delta] indicated that its patents are standard essential, but explained why it is not bound to license the '158 and '243 patents on so-called FRAND terms. (*Id.* at 16.)

- [TQ Delta] also identified the date of the hypothetical negotiation as "on or around the issuance date of the Asserted Patent(s)." (*Id.* at 17.)

(Ans. Br. at 1-2). TQ Delta further contends that DISH's assertion that TQ Delta has failed to identify a single comparable license in its possession is "misleading" because TQ Delta has disclosed "potentially comparable licenses of which it is currently aware." (*Id.* at 2-3). Lastly, TQ Delta contends that it has "provided a detailed description of information and identification of documents that constitute the factual underpinnings of [TQ Delta's] damages case at this stage of the proceedings." (*Id.* at 3).

### III.   LEGAL STANDARD

Rule 26(a)(1) of the Federal Rules of Civil Procedure provides:

> (A) A party must, without awaiting a discovery request, provide to the other parties:
>
>        * * *
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii).

"A party must make its initial disclosures based on the information then reasonably available to it . . . [and] is not excused from making its disclosures because it has not fully

6

investigated the case . . ." Fed. R. Civ. Pro. 26(a)(1)(E). However, at the Rule 26 disclosure stage, "a party [is not] expected to provide a calculation of damages . . . [that] depends on information in the possession of another party or person." Fed. R. Civ. P. 26 advisory committee notes (1993). "The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence." *Alza Corp. v. Andrx Pharms., LLC*, 2008 WL 1886042, at *2 (D. Del. Apr. 28, 2008) (citation omitted).

Parties are under a continuing obligation to supplement their Rule 26 disclosures, as well as their interrogatory responses. Specifically, Rule 26 requires:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory . . . — must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1)(A)-(B).

## IV.    DISCUSSION

DISH seeks an Order to compel TQ Delta to supplement its Damages Disclosures to (1) provide DISH the requisite computation of each category of damages that TQ Delta claims and to produce or otherwise make available for inspection and copying under Rule 34 the documents or other evidentiary material on which each computation is based; and (2) identify what TQ Delta contends constitutes the royalty base, the appropriate royalty rate, comparable licenses, any convoyed or collateral sales incorporated in the damages analysis, any recurring or subscription revenue incorporated in the damages analysis, and to identify any documents that TQ Delta will rely upon to support its damages allegations. Having carefully reviewed and evaluated TQ Delta's

Damages Disclosures and the parties' respective briefing, the Special Master finds that TQ Delta's

Damages Disclosures are deficient in some respects. Thus, DISH is entitled to some relief in the

form of the supplementing of TQ Delta's Damages Disclosures.

### A. TQ Delta Must Supplement Its Damages Disclosures In Certain Respects.

Again, Rule 26 requires a party to disclose "a computation of any category of damages

claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). In applying Rule 26, courts[3] generally have construed

"computation" to require "a specific computation of a plaintiff's damages," which includes both

an estimate of the amount of damages a party seeks, and "a disclosure of evidentiary material upon

which the category of damages is based." *Koninklijke Philips Elecs. N.V. v. ZOLL LifeCor Corp.*,

2017 WL 4764670, *2 (W.D.Pa. Oct. 20, 2017) (*citing Stemrich v. Zabiyaka*, 2013 WL 4080310,

at *1 (M.D. Pa. Aug. 13, 2013).[4] Thus, in a patent infringement action, Rule 26 disclosures require

that a plaintiff disclose, among other things, its claimed royalty rate and royalty base, the *Georgia-*

*Pacific* factors it will rely upon as well as "all evidence it will rely on for that factor," and any and

all license agreements it contends are comparable. *Brandywine Commc'ns Techs., LLC v. Cisco*

---

[3] The Special Master was unable to find any published case in this District defining the precise requirements of a Rule 26 "computation." For that reason, the Special Master cites cases from the Federal Circuit, the Third Circuit, other district courts within the Third Circuit, and elsewhere when appropriate.

[4] *See also In re Oakwood Homes Corp.*, 340 B.R. 510, 542 (Bankr. D. Del. 2006) (granting a motion to compel damages computation under Rule 26 and ordering that plaintiffs provide a rough estimate of its damages and the facts and methodology on how plaintiffs came to its estimates); *N. Am. Communs., Inc. v. Sessa*, 2015 WL 5714514, at *12, (W.D. Pa. Sept. 29, 2015) (granting a motion to compel initial disclosures where the plaintiff "failed to provide a dollar figure or any analysis regarding its computation of damages" and supplied "no proffered reason why [it] cannot provide Defendant with the computation of its damages"); *Stemrich v. Zabiyaka*, 2013 WL 4080310, at *3 (M.D. Pa. Aug. 13, 2013) (holding that "Plaintiffs must disclose a computation of each category of damages using the 'best information available' at the present time, and supplement that information as it becomes available," because "the court will not accept that Plaintiffs have absolutely no clearer computation").

*Sys., Inc.*, 2012 WL 5504036, *1 (N.D. Cal. Nov. 13, 2012) (holding that plaintiff must disclose and specify damages "the best it can on pain of preclusion" even though some of the necessary information may lie with the accused infringer.)

Courts also require a plaintiff to provide its factual bases and evidentiary material upon which its claimed damages are based in response to damages contention interrogatories. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1 (D. Del. Oct. 22, 2013) (ordering that plaintiff supplement their supplemental responses to defendants' damages contention interrogatories to "provide [plaintiffs'] good faith bases for electing their theories of recovery."); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, Civil Action No. 14-878-LPS-CJB, D.I. 101 at 1-2 (D. Del. Jan. 28, 2016) (granting a motion to compel a supplemental response to defendant's interrogatory relating to plaintiff's claim for lost profits damages, and requiring that the response "shall amount to a meaningful articulation of the bases for [plaintiff's] contention that it is entitled to such damages" and include "a narrative explanation as to how the information contained in [certain documents referenced in a supplemental response to the interrogatory] shed light on [plaintiff's] contention that it is entitled to lost profits damages"); *see also MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1371 (Fed. Cir. 2021) (rejecting Plaintiff's "narrow reading" of Rule 26 only requiring its damages theories be developed in the expert's report and affirming the holding that Plaintiff was required to disclose royalty rates and the extrinsic evidence relied on to support the applicable royalty rates that Plaintiff intended to rely on at trial).

In light of the requirements discussed above and upon evaluation of TQ Delta's Damages Disclosures, the Special Master finds that TQ Delta's Damages Disclosures are deficient and must be supplemented in some respects as identified below.

### 1. TQ Delta Must Supplement Its Damages Disclosures to Provide an Initial Computation of Damages.

TQ Delta has failed to sufficiently disclose to DISH its Rule 26(a)(1)(A)(iii) computation of damages because it failed to provide an initial computation for each category of damages that TQ Delta seeks. Nowhere in TQ Delta's Damages Disclosures does it set forth an initial computation of its damages. Rather, TQ Delta only vaguely discloses that it "intends to seek damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, along with treble damages and attorneys' fees" and further that "[i]n no event should the damages to which TQ Delta is entitled amount to less than a reasonable royalty." R. 26 Discl. at 7; Rog. 1 Resp. at 14. TQ Delta must supplement its Damages Disclosures to provide an initial computation of its damages in accordance with Rule 26(a)(1)(A)(iii). *See Koninklijke Philips Elecs.*, 2017 WL 4764670, at *2; *Brandywine Commc'ns Techs., LLC*, 2012 WL 5504036, at *2; *Silicon Knights, Inc. v. Epic Games, Inc.*, 2012 WL 1596722, at *4 (E.D.N.C. May 7, 2012) ("Disclosing damages-related documents alone, without disclosing a computation based on such documents does not satisfy a party's Rule 26(a)(1)(A)(iii) obligation.").

The Special Master does recognize that a party's damages are dependent upon expert opinion to some extent. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1. Thus, the Special Master neither expects nor requires TQ Delta to set forth a *final* calculation of its damages at this stage of the action. Indeed, the Special Master anticipates that TQ Delta's damages calculation will be updated, further refined and/or supplemented by an expert report and testimony consistent with the applicable deadlines of the scheduling order. However, TQ Delta cannot simply punt its obligation under Rule 26 to adequately disclose its computation of damages. *See Stemrich*, 2013 WL 4080310, *3 (relying

10

upon Rule 26's "explicit[ ] contemplate[ion] [of] such a procedure by placing an affirmative obligation for a party to initially disclose information available to [it] and subsequently update the information as it becomes available" and rejecting Plaintiff's argument that a more specific disclosure will be provided following a review of the case by Plaintiffs' expert).

In other words, "[Rule 26]" does not require a full exposition of the type required at trial or in an expert report but it does expressly require an initial computation and disclosure of evidence that will be relied on to the full extent the patent plaintiff could or should know of it in the exercise of the type of pre-suit diligence required by Rule 11." *Brandywine Commc'ns Techs., LLC*, 2012 WL 5504036, at \*2. TQ Delta's Damages Disclosures must be supplemented to meet this standard.

### 2. TQ Delta Must Supplement Its Damages Disclosures to Disclose the Factual Bases Upon Which Its Damages Are Based.

TQ Delta's Damages Disclosures also are deficient under Rule 26 because they do not disclose the factual bases upon which TQ Delta's damages are based.[5]  Despite TQ Delta's argument that it has set forth "more than nine pages of legal and factual bases" in support of its damages (Ans. Br. at 1), a significant portion of the nine pages explain only TQ Delta's legal bases for alleged damages and notably absent are the requisite factual bases on which the alleged damages are based.  For example, TQ Delta discloses that "[i]n no event should the damages to which TQ Delta [is] entitled amount to less than a reasonable royalty[]" and that it will rely upon the Analytical Method and the Hypothetical Negotiation Approach to calculate a reasonable royalty. R. 26 Discl. at 7-9; Rog. 1 Resp. at 14-16. However, despite the legal explanations that

---

[5] TQ Delta's failure to disclose such factual bases similarly renders its Third Supplemental Response deficient. *See* Interrogatory No. 1 (requesting the "full factual . . . bases for TQ Delta's damages claims against DISH, including but not limited to: . . . (2) the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount, if any;").

11

TQ Delta provides for both the Analytical Method and the Hypothetical Negotiation Approach, TQ Delta does not provide any of the necessary factual bases that would support applying these methods to calculate a reasonable royalty, including, but not limited to, identifying the royalty base, the appropriate royalty rate, identifying any relevant convoyed or collateral sales that are or may be incorporated in the damages analysis, and identifying any relevant recurring or subscription revenue that is or may be incorporated in the damages analysis. Such information is necessary for DISH to understand and evaluate TQ Delta's alleged damages and should be disclosed to DISH. *See MLC Intellectual Property, LLC*, 2021 WL 3778405, at *9 (holding that "the district court was within its discretion in determining that, though MLC was not required to disclose its expert opinions during fact discovery, it was still required to disclose (1) its view that Hynix and Toshiba license agreements reflect a 0.25% royalty rate and (2) the extrinsic evidence Mr. Milani relied on to support that view in response to Micron's reasonable requests for all facts, evidence, and testimony regarding any applicable royalty that MLS intended to rely on at trial.");[6] *Brandywine Commc'ns Techs.*, 2012 WL 5503036 at *2 (requiring that a Rule 26(a)(1)(A)(iii) computation include a reasonable royalty rate as to each accused product).

Similarly, although TQ Delta relies on at least some of the *Georgia-Pacific* factors in its discussion of the Hypothetical Negotiation Approach, it does not include any factual bases to support the application of those factors. R. 26 Discl. at 8-9; Rog. 1 Resp. at 15-16. Thus, TQ Delta's Damages Disclosures fail to meet the requirements of Rule 26 and also fail to meet the express requirements of Interrogatory No. 1 ("describe the full factual and legal bases for TQ

---

[6] Although TQ Delta attempts to distinguish the *MLC Intellectual Property, LLC* decision factually, such factual differences do not alter the court's finding in *MLC Intellectual Property, LLC* that information concerning the applicable royalty rate should have been disclosed under Plaintiff's Rule 26 disclosures. (Ans. Br. at 2).

Delta's damages claims against DISH, including . . . (6) all factors, including those described under *Georgia-Pacific Corp. v. U.S Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), that TQ Delta contends support its damages claims **and a description of how each such factor allegedly supports its claims;**")(emphasis added)). *See Brandywine Commc'ns Tech.*, 2012 WL 5504036, *2 ("If a reasonable royalty is claimed, and if the patent plaintiff is going to rely on any of the *Georgia Pacific* factors . . . , then the patent plaintiff must list each such asserted *Georgia Pacific* factor and identify all evidence it [will] rely on for that factor, save and only except for such evidence as it could not be reasonably expected to possess (and does not possess) at the outset of the litigation.").

Similarly, TQ Delta's Damages Disclosures provide that "TQ Delta may pursue one or more of the following three methodologies for assessing patent damages: Income Approach, Market Approach, and Cost Approach . . ." and provide detailed legal explanations for those methodologies. R. 26 Discl. at 10-14; Rog. 1 Resp. at 17-21. However, TQ Delta's Damages Disclosures do not provide sufficient factual bases to facilitate any assessment of its alleged damages under any of those three identified methodologies.

Moreover, TQ Delta's Damages Disclosures provide that, under the Market Approach, it may "rely upon a same or 'comparable' license or settlement agreement(s)[.]" R. 26 Discl. at 12; Rog. 1 Resp. at 19. TQ Delta identifies two specific "potentially comparable benchmark[s]" including (1) TiVO's offer to license as posted on its website; and (2) TiVO's settlement with DISH in April 2011. R. 26 Discl. at 20-21; Rog. 1 Resp. at 19-20. However, beyond those two specific licenses, TQ Delta only vaguely identifies additional "licenses that may encompass the asserted patents which may be determined" through certain produced documents and more than twenty-five licenses agreements produced by DISH identified only by bates-numbers. *Id.* Despite

13

its references to those documents, TQ Delta has not taken a position on whether the additional licenses identified are considered potentially comparable. To the extent TQ Delta has any additional clarity as to its position of whether the additional licenses it references are "comparable benchmarks," TQ Delta should disclose that information to DISH. In addition to identifying potential comparable licenses, TQ Delta should provide the initial factual bases that may support any comparability analysis.

Additionally, TQ Delta's objection to Interrogatory No. 1 on the basis that it seeks expert testimony and TQ Delta's claims that it need not disclose the factual bases of its damages claimed until expert discovery are not entirely valid and sufficient. Specifically, TQ Delta objects on the basis that "the request for 'the methodology and calculation of such damages, including the royalty rate, royalty base (including whether TQ Delta intends to rely on the entire market value for the Accused Products), relevant time period, and lump-sum amount' calls for the subject of expert opinion[.]" Rog. 1 Resp. at 13; *see also id.* at 19 ("[f]urther investigation of available information as to its applicability to the Income Approach in this case shall be based on analysis that requires expert opinion testimony and is accordingly within the scope and purview of expert discovery."); *id.* at 21 ("[f]urther investigation of available information on the applicability of the license agreements, settlement agreements and offers to license as a valid metric for the Market Approach in this case, shall be based on analysis that requires expert opinion testimony and is accordingly within the scope and purview of expert testimony."); and *id.* at 21 ("[i]nvestigation of available information on the applicability of the Cost Approach shall be based on analysis that requires expert testimony and is accordingly within the scope and purview of expert discovery."). TQ Delta must disclose the factual bases that support its damages contentions and cannot simply respond that such discovery is the subject of expert opinion. *See In re Cyclobenzaprine Hydrochloride*

14

*Extended-Release Capsule Patent Litig.*, 2013 WL 12291705, at * 1; *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) (finding interrogatory response summarized as "wait until we serve our expert report" to be "plainly insufficient" and granting motion to compel further responses to damages interrogatories, including disclosure of facts upon which plaintiff sought a reasonable royalty).

### 3. TQ Delta Must Supplement Its Damages Disclosures to Identify Any Documents It Intends to Rely on in Support of Its Damages Claim.

TQ Delta's Damages Disclosures also are deficient to the extent that TQ Delta does not identify for DISH the documents that TQ Delta intends to rely on to support its claim for damages. For example, there are references throughout TQ Delta's Damages Disclosures where TQ Delta refers to its reliance on evidence without specifically identifying *any* documents. *See* Rog. 1 Resp. at 18 ("While discovery is ongoing, financial information (e.g., units, revenues, costs and margins) and other information may be used to inform an expert opinion under this approach."). This broad reference to the type of information that TQ Delta may rely upon in support of its damages claims is insufficient. TQ Delta should specifically identify the documents that it purports to rely on to support its damages claims. *See GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, Civil Action No. 14-878-LPS-CJB, D.I. 101 at 1-2 (D. Del. Jan. 28, 2016).

Also, TQ Delta's Damages Disclosures contain a limited number of references to evidence that TQ Delta identifies in support of its claims for damages. However, it appears that such references are incomplete and only serve as examples of such documents as opposed to a complete listing.[7] In such instances, and to the extent that TQ Delta can do so at this time, TQ Delta should

---

[7] For example, TQ Delta discloses that it may rely on "Defendant's financial performance associated with sale/rental/lease/deployment and/or other benefits or consideration derived directly or indirectly from the Accused Products and/or the services employing the same. Examples of such documents for [DISH] include (but not limited to) those with the following production Bates: DISH00032859, DISH00027928-29568, DISH00021489-23012, and

15

provide a complete listing of the documents and/or other evidence it contends supports it claims for damages. Otherwise, TQ Delta should supplement its Damages Disclosures as soon as it is able to do so in accordance with its duty to supplement its disclosures and discovery responses as required by Rule 26.

## V.   CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion is GRANTED. Within fourteen (14) days of this Order, TQ Delta shall:

(1) supplement its Federal Rule of Civil Procedure 26(a)(1)(A)(iii) disclosure to provide a computation of each category of damages claimed and also to produce or otherwise make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(2) supplement its response to Interrogatory No. 1 to include an identification of what TQ Delta contends constitutes the royalty base, the appropriate royalty rate, comparable licenses, identify any relevant convoyed or collateral sales to be incorporated in the damages analysis, identify any relevant recurring or subscription revenue to be incorporated in the damages analysis, and identify any documents that TQ Delta will rely upon to support its damages allegations.

It should be understood by all that TQ Delta may specify or make clear that its damages computation is initial or preliminary based on the information reasonably available to it at the current time and that its damages computation, the factual bases on which it is based, and the

---

DISH00029595-29664." Rog. 1 Resp. at 16; *see also id.* at 17 ("[a]n example of documents showing units deployed, thus implying an approximate date of first sale for [DISH] includes (but not limited to) the document bearing production Bates: DISH00032859.").

16

documents and/or other evidence identified in support of its claimed damages, may be further refined, updated and supplemented as discovery continues and/or by expert report consistent with Rule 26.

ENTERED this 19th day of October 2021.

_____
Gregory B. Williams (#4195)
Special Master

SO ORDERED this _____ day of _____, 2021.

_____
UNITED STATES DISTRICT COURT JUDGE

17